UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE SMOLAR,

       Plaintiff,                                      Case No.  12-cv-13388
                                                        HON.  GERSHWIN A.  DRAIN
v.

THE SPX CORPORATION SHORT AND LONG-TERM
DISABILITY PLANS,

       Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD [#17] AND DENYING PLAINTIFF'S CROSS MOTION
FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [#13]
AND DISMISSING ACTION**

**I.     INTRODUCTION**

On August 1, 2012, Plaintiff, Duane Smolar, filed the instant action claiming that Defendant, The SPX Corporation Short and Long-Term Disability Plans (the"Plan") breached the terms of an employee benefit plan by arbitrarily and capriciously denying his claim for disability benefits, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq*.  Presently before the Court are the following motions: (1) Plaintiff's Motion for Judgment on the Administrative Record filed on February 15, 2013, and (2) Defendant's Cross Motion for Judgment on the Administrative Record.  The parties' motions are fully briefed and the Court concludes that a hearing is unnecessary.  *See* E.D. Mich. LR 7.1(e)(2).  For the reasons that follow, the

Court grants Defendant's Cross Motion for Judgment on the Administrative Record [#17] and denies Plaintiff's Motion for Judgment on the Administrative Record [#13].

## II.     FACTUAL BACKGROUND

Plaintiff worked for SPX Corporation ("SPX") as a Technical Author until on or about June 30, 2011, when he made a claim for short-term disability ("STD") benefits due to chronic back and joint pain.  As a Technical Author, Plaintiff's job responsibilities required him to develop and update information and documents for Harley Davidson dealers.

As an employee of SPX, Plaintiff participated in the Plan.  Under the Plan, disability benefits are provided to eligible participants who satisfy the criteria for receipt of such benefits.  Specifically, the Plan states:

> You are considered disabled under this Plan if, due to a non-work-related illness or accidental injury, you are receiving appropriate care and treatment from a physician on a regular basis and: for the first 24 months from the onset of the disability, you are not able to earn 70% of your pre-disability earnings from your regular occupation for which you are reasonably qualified by training, education, or experience in the local economy; or beyond 24 months, you are not able to earn 60% of your pre-disability earnings at any occupation for which you are reasonably qualified by training, education, or experience in the local economy.
>
> The determination of whether you are disabled, including (without limitation) if you are receiving "appropriate care and treatment" is determined by the Claims Administrator, or the SPX Retirement and Welfare Plan Administrative Committee (the "SPX Administrative Committee"). Your occupation is broader than your specific job. It refers to the activities you regularly perform that serve as your source of income. It is not limited to our specific positions at SPX. The determination of disability considers all objective medical evidence.

AR 207-208.

In July of 2011, Plaintiff applied for disability benefits with the Plan. On

July 6, 2011, Plaintiff was treated by his primary care physician, Arqam Zia, M.D. ("Dr. Zia"), for lower back pain. Dr. Zia restricted Plaintiff from bending, twisting, kneeling, or lifting in excess of fifteen pounds. Plaintiff was also restricted to sitting for no longer than an hour and no repetitive squatting, bending, or lifting. Dr. Zia referred Plaintiff to physical therapy and placed him off of work from July 6, 2011 through July 12, 2011. On July 25, 2011, Dr. Zia completed an Attending Physician's Statement, which stated that Plaintiff had radiating pain to his lower extremities and both feet burned and were occasionally numb. Dr. Zia continued Plaintiff's prior restrictions and listed a return to work date of August 11, 2011.

On July 26, 2011, pursuant to a referral from Dr. Zia, Plaintiff visited Dr. David Kim ("Dr. Kim"), M.D. for pain management. Dr. Kim found during his physical examination of Plaintiff that "[p]ain reproduced with flexion to the lumbar spine. . . and [p]ositive straight leg raise on the left, negative on the right." Dr. Kim also offered Plaintiff L5-S1 epidural steroid injections; however, Plaintiff preferred to postpone the steroid intervention until after he completed the prescribed physical therapy.

On July 28, 2011, Plaintiff's application for STD benefits was approved through August 11, 2011. Plaintiff treated with Dr. Zia on August 11, 2011, with the complaint that his back pain was not improving. Dr. Zia diagnosed paralumbar spine tenderness and limited range of motion of the spine because of pain. Plaintiff's absence from work was extended to September 12, 2011.

On September 7, 2011, Dr. Zia indicated to Defendant's Plan administrator, Nationwide, regarding proposed work accommodations submitted by Defendant that "yes"

Plaintiff should be able to perform the following: (1) Work at a standing computer station alternating with Plaintiff's regular desk, (2) Plaintiff can work 24-30 hours a week until December 15, 2011, if necessary, and (3) Plaintiff can work at home with a company laptop if office conditions are not appropriate. *See* AR 85.

However, on September 12, 2011, one week after advising Defendant that the proposed work restrictions were approved, Dr. Zia indicated that "[Plaintiff] has been advised that I told him not to return to work, cannot bend, twist, kneel, or lift because of his back issues/pain." *See* AR 82.

Plaintiff saw Dr. Zia again on October 6, 2011. Dr. Zia noted that Plaintiff was walking bent over and appeared to be in discomfort and pain. Dr. Zia also stated during this visit Plaintiff stood and sat every five to ten minutes to prevent back pain or numbness in his lower extremities. Plaintiff was given a permanent handicap parking permit. Dr. Zia noted that Plaintiff could not return to work due to his medical conditions, and that Plaintiff indicated that his pain medications interfered with his cognitive functions and performance preventing him from working from home. *See* AR 77.

On October 12, 2011, Dr. Zia followed up Plaintiff's prior office visit with a note stating that Plaintiff could not return to work pursuant to Dr. Zia's notes from Plaintiff's prior office visit.

On October 20, 2011, the Plan's third-party administrator ("TPA") had Plaintiff's medical history and records reviewed by Dr. David Trotter, M.D., a Board Certified Orthopedic Surgeon ("Dr. Trotter"). Dr. Trotter opined that, "There is no specific clinical documentation indicating that this patient in unable to work in any capacity. The current employer has made significant attempts to accommodate the patient and initially the

provider agreed that [Plaintiff] would be capable of work. Documentation on file does not support ongoing 'permanent' disability." *See* AR 164.

Dr. Trotter documented several unsuccessful attempts to contact Dr. Zia for a peer conference on October 19, 20, 21, 24, 25, 2011. On October 27, 2011, Dr. Zia and Dr. Trotter did talk; however, Dr. Zia's notes indicate that Dr. Trotter informed him that he would review Plaintiff's case and get back to him. *See* AR 139.

Plaintiff filed another claim for disability benefits for the absence period beginning October 15, 2011. On October 31, 2011, Plaintiff was denied disability benefits because the Plan's TPA did not receive requested medical information from Plaintiff's physician. On November 2, 2011, Plaintiff appealed the denial of STD benefits. On November 9, 2011, the Plan's TPA denied Plaintiff's appeal based on the November 7, 2011, assessment of reviewing physician Dr. Moore. Dr. Moore is on the Medical Panel of Experts from SPX's TPA. Dr. Moore noted that "there is inadequate supporting medical documentation of an ongoing disability. Therefore, [Plaintiff does] not meet the definition of disability based on the Short Term Disability plan." AR 46. Dr. Moore also added that Plaintiff was able to perform activities of daily living ("ADL's").

On November 21, 2011, Plaintiff saw Dr. Zia to request for disability paperwork to be completed for Plaintiff's application for Social Security ("SS") benefits. Dr. Zia also completed a Medical Assessment of Ability to Do Work Related Activities (physical) form. Dr. Zia indicated that Plaintiff could only stand/walk or sit for an hour each out of an eight hour day in fifteen minute intervals. Plaintiff also needed unscheduled breaks every fifteen minutes for five to ten minute intervals for a total of four hours in an eight hour work day. AR 177.

On March 30, 2012, Dr. David Kim treated Plaintiff and concluded:

> [Plaintiff] appears . . . in moderate discomfort secondary to pain. He has difficulty sitting or standing for long periods of time. He needs to change position to stay comfortable, but sitting actually make his pain markedly worse.
>
>    *       *       *
>
> I would agree at this stage given his pain symptoms and the degenerative changes in his lumbar spine that it would be difficult for him to sit for long periods of time as well. He would need change position frequently and I am not sure [Plaintiff] can tolerate a full employment at this time. I have told him that if he is going to apply for disability, then at this stage I think that might be a good idea, and currently, I don't think he would be able to do his usual job.I think bending, especially prolonged walking, and twisting of his back would be difficult as well and doing any lifting as well over 5 pounds, I think, would be great difficulty as well. Prolonged walking and prolonged sitting will also be difficult. Therefore, I would probably endorse the patient's current disability application.

AR 158-159.

On April 20, 2012, Plaintiff retained counsel and appealed the initial denial and the denial of the subsequent appeal. Defendant had Plaintiff's second appeal reviewed by Dr. Alan Brecher, M.D ("Dr. Brecher"). Dr. Brecher reviewed Plaintiff's medical records and medical history and determined that "the [Plaintiff] was not disabled, based on the plan's definition of disability." AR 23-25. On July 23, 2012, the Plan concluded that Plaintiff did not meet the requirements for disability as prescribed in the Plan document and denied Plaintiff's appeal.

Plaintiff filed the instant action on August 1, 2012.

### III. LAW & ANALYSIS

#### A. Standard of Review

A denial of benefits under an ERISA plan "is to be reviewed under a *de novo*

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989). The Sixth Circuit requires "a clear grant of discretion" to the administrator or fiduciary before replacing the *de novo* standard of review. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994). "When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998). "When a court reviews a decision *de novo*, it simply decides whether or not it agrees with the decision under review." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). Under the *de novo* standard, the court does not presume the correctness of the administrator's benefits determination nor does it provide deference to its decision. *Id.* at 966.

If a plan gives the administrator discretion, the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). Such decisions are not arbitrary and capricious if the decision to terminate benefits was the product of deliberate principled decision-making and based on substantial evidence. *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 2005). "[T]he arbitrary or capricious standard is the least demanding form of judicial review of administrative action and when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989). Thus, the Court can overturn the administrator's decision "only

by finding that they abused their discretion–which is to say, that they were not just clearly incorrect but downright unreasonable." *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990); *see also Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000). "It is only if the court is confident that the decision maker overlooked something important or seriously erred in appreciating the significance of the evidence that it may conclude that a decision was arbitrary and capricious." *Ericksen v. Metro. Life Ins. Co.*, 39 F. Supp.2d 864, 870 (E.D. Mich. 1999).

Plaintiff argues that the arbitrary and capricious standard of review applies to this matter. Defendant concurs with Plaintiff. The Court agrees and the appropriate standard of review will be the standard of arbitrary and capricious.

### B. SPX's Denial of Plaintiff's Disability Benefits Claim

Here, the Court finds that Plaintiff received a full and fair review of his claim and the denial of his claim was not arbitrary or capricious. Defendant argues that Plaintiff's claim was reviewed by three different "highly qualified medical doctors" on three separate occasions. *See* Def.'s Cross Mot., Dkt. No. 17, pg. 7. Dr. David Trotter, MD, is a Board Certified Orthopedic Surgeon. Dr. Moore is on the Medical Panel of Experts from SPX's TPA. Dr. Allen Michael Brecher is also a Board Certified Orthopedic Surgeon. Defendant states that its decision to deny Plaintiff continued disability benefits was not arbitrary and capricious because it was decided based on a fair and thorough examination of the information provided. *Id.*

In support of his motion for judgment on the administrative record, the Plaintiff states that Defendant's decision to terminate his benefits was arbitrary and capricious

because, first, the Plan's inherent conflict of interest improperly influences its decision; second, the Plan selectively reviewed/cherry-picked evidence and ignored other critical medical evidence; third, the Plan relied on its three physicians, along with Dr. Zia's vacillating supporting opinion of Plaintiff; fourth, Plaintiff did not have an Independent Medical Exam ("IME"); fifth, the Plan was wrong in its interpretation of Plaintiff's Social Security Disability ("SSD") award; and finally, the accommodations Defendant offered Plaintiff were disingenuous because Plaintiff was still unable to work. *See* Plt.'s Mot., Dkt. No. 13, pg. 13.

### 1. Conflict of Interest

As a preliminary matter, the Court finds that a conflict of interest does exist in this suit because the Plan administrator has a joint role of decision maker and payer of benefits. AR 240. However, "mere allegations of the existence of a structural conflict of interest are not enough for the court to reject a plan administrator's denial of benefits where there is substantial evidence in the administrative record that supports his or her decision; there must be some evidence that the alleged conflict of interest actually affected the plan administrator's decision to deny benefits." *Lanier v. Metro. Life Ins. Co.*, 692 F. Supp. 2d 775, 786 (E.D. Mich. 2010) (citing *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998)). Plaintiff has not presented the Court with any evidence that supports that the conflict of interest affected how the Plan administrator made its decision. Indeed, the effects of such a conflict are inherently difficult to prove; however, the Court will continue to weigh this conflict as a factor against Defendant when determining whether Defendant's decision to terminate Plaintiff's disability benefits was arbitrary and capricious. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117

(2008).

### 2. Selective Review of Medical Evidence

Plaintiff contends that the Defendant selectively picked and chose what medical information it used to make its decision to deny Plaintiff's disability claim. *See* Plt.'s Mot., Dkt. 13, pg. 13. Plaintiff further argues that he has provided adequate objective evidence that proves he suffers from significant spinal and joint pathologies that cause pain and functional impairments which render him disabled under the Plan. *Id.* at 14. Plaintiff maintains that his primary care physician, Dr. Zia's opinion should not be considered because Dr. Zia repeatedly changed his opinion.

Additionally, Plaintiff states that Dr. Trotter's opinion was not thorough because Dr. Trotter did not use the Plan's definition of disability when assessing Plaintiff's ability to work. Furthermore, Plaintiff argues that Dr. Trotter's attempts to speak with Dr. Zia were not credible and that Dr. Trotter did not want to consult with Dr. Zia. *Id.* at 17.

As to Dr. Brecher, Plaintiff argues that Dr. Brecher did not review Plaintiff's job description and did not utilize the Plan's definition of disability. Plaintiff contends that Dr. Brecher did not try and contact any of his other treating physicians and only relied on the recommendations of Dr. Zia and Defendant. Plaintiff points the Court to several diagnosis made by reviewing physicians regarding different lumbar and knee pathologies.

Conversely, Defendant argues that there is nothing in the Administrative Record that suggests it was not reasonable for both Dr. Trotter and Dr. Brecher to rely in good faith on Dr. Zia's multiple references that Plaintiff was not disabled. Defendant further

maintains that it made its decision denying Plaintiff's disability benefit claim based on its review of all of Plaintiff's medical information and the opinions of various doctors, including Dr. Zia.

The Court agrees with Plaintiff's proposition that a Plan administrator may not ignore relevant medical evidence presented before it. *See Black and Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2004). However, it is not enough, whether it be in the form of treating or primary care physician records or otherwise, that Plaintiff produce evidence that he suffered from one or more recognized medical conditions. Plaintiff must produce evidence that these conditions made him "disabled" within the meaning of the Plan and thus prevented him from performing the regular activities essential to his source of income. AR 233. *See also, Vick v. Metro Life Ins. Co.*, 417 F. Supp 2d 868, 880 (E.D. Mich 2006).

Here, there is no evidence that Defendant selectively viewed or considered some medical evidence over another. Plaintiff makes a conclusory statement without providing the Court with any support for his proposition other than a list of attending physician diagnosis of different maladies. *See* Plt.'s Mot., Dkt. No. 13 Contrary to, pg. 15. Plaintiff's assertions, on October 25, 2011, Dr. Trotter goes into detail regarding the medical documentation that was reviewed before he concluded that Plaintiff was not disabled per the plan. AR 50. As can be seen in Dr. Trotter's report, the doctor specifically addresses in detail not only the medical evidence, but also Plaintiff's subjective claims, clearly indicating that those factors were considered. AR 50-55.

Furthermore, on November 9, 2011, Defendant's TPA sent Plaintiff a letter titled Outcome of Appeal Review that listed all of the documentation reviewed in making the

decision that denied the claim. It is clear that Dr. Trotter reviewed the medical documentation regarding Plaintiff's lumbar and knee pathologies; however, Dr. Trotter concluded that Plaintiff did not meet the plan's recommendations of being disabled.

Again, inapposite to Plaintiff's assertions, the TPA explicitly lists the documents Dr. Moore reviewed. The medical documents contained the information that Plaintiff asserts were not considered, as information that was reviewed by Dr. Moore in his physician review of the claim. AR 46. Therefore, the Court does not find that Defendant's review of the medical evidence was arbitrary and capricious.

### 3. Plan's Reliance on its Physicians' Opinions and Dr. Zia

The Plaintiff argues that the Plan's reliance on its three Physicians, along with Dr. Zia's conflicting opinion, was arbitrary and capricious. The question becomes, whether Defendant acted arbitrarily and capriciously by favoring the opinions of its physicians and Dr. Zia, Plaintiff's primary care physician, over those of Plaintiff's other treating physicians.

Plaintiff first challenges Dr. Zia, his own primary care physician, by indicating that Dr. Zia is not an orthopaedic surgeon or pain specialist. Plaintiff further attempts to "neutralize" Dr. Zia's opinions by averring that Dr. Zia prepared disability paperwork for Plaintiff and submitted it to Defendant and the Social Security Administration ("SSA"). On the other hand, Plaintiff contends that Dr. Zia has also agreed with the Plan's reviewing physicians in their diagnosis that Plaintiff was not disabled. In light of Dr. Zia's "conflicting" opinions, Plaintiff argues that his opinions should "cancel" each other out. *See* Plt.'s Mot., Dkt. No. 13, pg.15. The Court disagrees.

"A treating physician's opinion may not be disregarded when there is no rational basis for doing so." *Nord,* 538 U.S. at 831. It is not arbitrary or capricious for Defendant's reviewing physicians to consider statements made by Plaintiff's primary care physician. Dr. Zia's statements were considered in tandem with all of Plaintiff's submitted medical documentation. Thus, Plaintiff has failed to prove that Defendant's consideration of Dr. Zia's opinions regarding Plaintiff not being disabled was arbitrary and capricious.

Dr. Trotter, as stated earlier, reviewed Plaintiff's medical documentation and gave a detailed review of Plaintiff's subjective claims, as well as the objective medical diagnosis in Plaintiff's medical records. Plaintiff contends that Dr. Trotter's review was cursory and that Dr. Trotter made his assessment based off of "case notes." See Plt.'s Mot., Dkt. 13, pg. 13. "There is nothing "inherently objectionable about a file review by a qualified physician in the contest of a benefits determination." *Calvert v. Firststar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005); *see also, Davis v. Unum Life Ins. Co. Of America*, 444 F.3d 569 (7th Cir. 2006). ("In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation."

Here, Dr. Trotter's file review was sufficient. As discussed above, Dr. Trotter addressed in detail not only the medical evidence, but also Plaintiff's subjective claims, indicative of a thorough review of Plaintiff's file. Accordingly, Defendant's consideration of Dr. Trotter's physician review was not arbitrary nor capricious.

Finally, Plaintiff argues that Dr. Brecher did not review Plaintiff's job description and that the doctor did not speak to other treating physicians who favored a disability ruling for Plaintiff. As to Plaintiff's job description, Plaintiff fails to address that the Plan

states:

> You are considered disabled under this Plan if, due to a non-work-related Illness or accidental injury, you are receiving appropriate care and treatment from a physician on a regular basis and you are not able to earn 70% of your pre-disability earnings from your regular occupation. . . .
>
>        \*       \*       \*
>
> Your occupation is broader than your specific job. It refers to the activities you regularly perform that serve as your source of income. It is not limited to your specific positions at SPX. The determination of disability considers all objective medical evidence.

AR 233.

The plan seems to reject the notion that only Plaintiff's actual job description is an accurate assessment of what is required for purposes of defining Plaintiff's "occupation". The Plan explicitly states that "occupation" refers to the activities Plaintiff can regularly perform. Dr. Brecher, in reviewing Plaintiff's medical files, did review a Medical Assessment of Ability to do Work Related Activities ("MAAWRA"). *See* AR 176-178. Plaintiff has not disputed the MAAWRA document.

"Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). In *Black and Decker Nord* the United States Supreme Court rejected the proposition that the opinions of treating physicians are inherently more reliable than those of non-treating physicians. Thus, Dr. Brecher was not required to accord greater weight to the opinions of Plaintiff's treating physicians simply because they actually treated Plaintiff. *Nord*, 538 U.S. 822 (2003).

-14-

Therefore, Plaintiff has not shown that Defendant acted arbitrarily nor capriciously by favoring its physicians' opinions over those of Plaintiff's treating physicians.

### 4. IME

Plaintiff additionally claims that Defendant's decision was arbitrary and capricious because Defendant relied on physicians' file reviews in making their determination, and did not direct Plaintiff to have an IME. Defendant argues that Plaintiff was seen by multiple doctors who prepared detailed reports and summaries. In addition, Defendant contends that there were numerous MRI's and x-rays for the reviewing physicians to review to make their determination.

Plaintiff does not recognize that the failure of a plan to conduct an independent medical examination and instead rely on a file review does not render a denial of benefits *per se* arbitrary, but it is another factor that must be considered in the overall assessment of whether the decision making process was arbitrary and capricious. *See Calvert,* 409 F.3d 286 (6th Cir. 2005). Defendant's reviewing physicians reviewed a voluminous amount of Plaintiff's medical records and had discussion with Plaintiff's primary care physician in making their denial of Plaintiff's benefits. Although an IME might be helpful, Defendant's decision not to perform an IME was neither arbitrary or capricious. *See Noland v. Prudential Ins. Co. of Am.*, 187 Fed. Appx. 447, 453-54 (6th Cir. 2006) (finding that the defendant's decision to terminate benefits was not arbitrary or capricious despite the contrary SSA decision and the fact that the defendant relied on a file review instead of a physical examination).

### 5. Plaintiff's SSD Award

-15-

Plaintiff argues that another factor indicating that Defendant's denial of his claim was arbitrary and capricious is Defendant's "blatant disregard" for the SSA's opinion. *See* Plt.'s Mot., Dkt. No. 13, pg. 19-20. Plaintiff contends that the SSA findings were not given any weight by the reviewing committee. *Id*. at 19. Conversely, Defendant argues that the definition the SSA attributes to disability is not the same as Defendant's definition. Defendant contends that if the SSA were given all of the information Defendant has under its purview, the SSA would have likely denied Plaintiff's claim.

An insurer is not bound by the SSA determination. *Seiser v. UNUM Provident Corp.*, 135 F. App'x. 794, 799 (6th Cir. 2005). In *Black and Decker Disability Plan v. Nord,* the United States Supreme Court notes that there are "critical differences between the Social Security disability program and ERISA benefit plans." *Nord*, 538 U.S. at 832-33. In accord with *Nord*, the Sixth Circuit Court of Appeals recognized in *Hurse v. Hartford Life & Accid. Ins. Co.*, 77 Fed. Appx. 310, 2003 U.S. App. LEXIS 20030, Case No. 02-5496 (6th Cir. Sept. 26, 2003), the unbalanced dichotomy of correlating an ERISA plan administrator's determination to the SSA's disability determination, when the SSA is bound by a uniform set of federal criteria. And conversely, a claim under ERISA is often determined by the interpretation of the plan terms. *Id*.

Defendant obtained opinions from several reviewing physicians, along with Plaintiff's medical records and Plaintiff's primary care physician. The reviewing physicians all thoroughly reviewed Plaintiff's medical documentation and concluded that Plaintiff was not disabled based on the meaning of the Defendant's policy.

Defendant relied on those opinions in denying Plaintiff's claim for benefits. A plan administrator's determination is not arbitrary or capricious when a reasoned

explanation, based on the evidence, supports that determination. *See Davis V. Ky. Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989).

### 6.     Accommodations

Plaintiff argues that the Plan's accommodations were futile because even with the accommodations, Plaintiff could not perform his job duties. On the other hand, Defendant argues that its disability plan specifically sets forth that if Plaintiff refuses an offer of modified duty, rehabilitation, limited duty, or alternative employment, Defendant has the right to terminate benefits. *See* Def.'s Mot., Dkt. No. 17, pg. 7. states; see also AR 214, 235. Defendant further maintains that Plaintiff's primary care physician, Dr. Zia, approved the following accommodations:

> 1. Employer could make a standing computer terminal that Mr. Smolar can alternate with his regular desk.
> 2. He [Plaintiff] can work 24-30 hours a week until 12/15 if need be.
> 3. Provide a laptop for work at home if office conditions are not appropriate.

AR 85.

Under ERISA, an administrator vested with discretionary authority may consider workplace accommodations in determining whether an employee is totally disabled. *See Donatiello v. Hartford Life & Accid. Ins. Co*, 344 F. Supp. 2d 575, 583 (E.D. Mich 2004). Here, Defendant did not take a theoretical approach regarding Plaintiff's accommodations, it based its offer of accommodations to the Plaintiff on Dr. Zia, Plaintiff's primary care physician's, recommendations and other physicians' opinions in the Administrative Record.  AR 85.

Dr. Kim, Plaintiff's pain management specialist, did not offer an opinion on whether or not Plaintiff was disabled. Dr. Kim opined that "[Plaintiff mentions that he

was unable to tolerate prolonged sitting for work . . . and was not able to tolerate a job which was sitting down most of the time." AR 158. The accommodations proposed by the Plan administrator and approved by Dr. Zia, would have accommodated Plaintiff pursuant to Dr. Kim's diagnosis.

Dr. Bartol, an orthopedic surgeon, stated, "[Plaintiff] then tried a job [Technical Author] where he is doing mostly desk work, working at a computer and he found he could not tolerate the prolonged sitting that is required for the that job." AR 157.  Dr. Bartol goes on to say that, [Plaintiff] is unable to tolerate prolonged sitting for work and I do not think he will be able to tolerate[ ] a job where he has to sit all day." *Id.* Again, the accommodations approved by Dr. Zia provided for a stand up station for Plaintiff if needed. None of the doctors' opinions support Plaintiff's contentions that the accommodation offered by Defendant were "illusory."

The accommodations offered to Plaintiff were not arbitrary or capricious. Defendant reviewed Plaintiff's medical documentation and relied on the opinions of its reviewing physicians. Plaintiff does not present any contrary evidence that he is unable to perform his job with accommodations other than his subjective assertions. Thus, Plaintiff's claim that even with the accommodations he could not perform his job, are not substantiated by the record.

### C. Conclusion

Plaintiff's claim for disability benefits was reviewed by three competent physician peer reviewers who each examined Plaintiff's medical records and offered thorough, reasoned opinions for their conclusions that Plaintiff's disability claim under the Plan's definition was unsubstantiated. These physicians considered Plaintiff's treating

physician's statements and conclusions, Plaintiff's own claims of impairment and pain, and all the other medical documentation Plaintiff provided. Therefore, the Court finds that Defendant's denial of Plaintiff's disability benefits was not arbitrary or capricious.

Accordingly,

For the reasons stated above, Defendant's Cross Motion for Judgment on the Administrative Record [#17] is GRANTED. Plaintiff's Motion for Judgment on the Administrative Record [#13] is DENIED. This cause of action is dismissed.

SO ORDERED.

Dated: July 31, 2013
/s/Gershwin A Drain
JUDGE GERSHWIN A. DRAIN
UNITED STATES DISTRICT